UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

  Plaintiff,

 v.            O R D E R
               Crim. No. 09-242 (MJD/FLN)

Mahamud Said Omar,

  Defendant.
_____

 John Docherty, Charles J. Kovats and LeeAnn K. Bell, Assistant United States Attorneys and William M. Narus, United States Department of Justice, Counsel for Plaintiff.

 Andrew S. Birrell, Jon M. Hopeman and Paul C. Dworak, Counsel for Defendant.
_____

 The above-entitled matter comes before the Court upon the parties' objections to the Report and Recommendation of United States Magistrate Judge Franklin L. Noel dated May 1, 2012.

 Pursuant to statute, the Court has conducted a <u>de novo</u> review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.2(b). Based on that review, the Court adopts the Report and Recommendation, with the exceptions noted herein.

 The government raises four objections to the Report and Recommendation.

First, the government objects to the recommendation that all exhibits introduced at the motions hearing be unsealed as it would unfairly suggest that people mentioned in the exhibits were involved in criminal activity.  The government requests that unsealing be delayed until certain names can be redacted.  The Defendant does not object to such a delay.  The Court will thus not adopt the recommendation to unseal the hearing exhibits before redaction of names can be accomplished.

The government further objects to the Magistrate Judge's finding that there was a joint venture between the United States and the Netherlands with respect to the arrest of the Defendant in the Netherlands, and the wiretap and searches conducted by Dutch law enforcement.

The Defendant has moved to suppress all electronic surveillance evidence and all evidence obtained through search and seizure by Dutch law enforcement on the basis that such evidence was obtained in violation of his Fourth Amendment rights.  In this case, the Magistrate Judge has recommended that this Court deny this motion based on findings that the wiretap and searches were conducted pursuant to a joint venture between the United States and the Netherlands, that the Defendant, as a lawful permanent resident of the United

States, is protected by the Fourth Amendment, and because the wiretap and searches were conducted pursuant to Dutch law.

With respect to the finding of joint venture, the Magistrate Judge found that because the wiretap and searches of the Defendant's living quarters in the Netherlands was done at the request of the United States through MLAT, and because the Netherlands was not conducting its own investigation of the Defendant prior to the MLAT request, there was a joint venture between the United States and the Netherlands.  (R&R at 11.)

The government objects to this finding on the basis that if this Court adopts a standard that requires a finding of joint venture based solely on an MLAT request, the result is that evidence obtained stemming from such a request will be deemed admissible only if the government is put to the burden of presenting evidence from foreign officials to demonstrate compliance with foreign law.  In the alternative, the government would need to request the foreign government to follow U.S. evidence-gathering procedures.

Generally, the Fourth Amendment and the exclusionary rule have no application to the acts of foreign law enforcement officials on foreign soil, even if the subject of the foreign search is an American citizen.  United States v. Maturo,

982 F.2d 57, 60 (2d Cir. 1992).  Two exceptions to this rule are: 1) if the foreign search and seizure are so extreme as to shock the judicial conscience; and 2) when foreign officials are involved in a joint venture with the United States.  United States v. Barona, 56 F.3d 1087, 1091 (9th Cir. 1995).

A joint venture has been found where United States agents' participation in the foreign investigation is substantial.  United States v. Peterson, 812 F.2d 486, 490 (9th Cir. 1987).  For example, in Peterson, the court found that a joint venture existed where the U.S. agents described the investigation as "joint" and they were involved in daily translations and decoding of intercepted transmissions and advising of the foreign authorities.  Id.  See also Barona, 56 F.3d at 1094 (court found joint venture where American agents had requested the wiretaps, information obtained was immediately forwarded to them throughout surveillance, and the United States provided a Spanish to English translator).

By contrast, where the United States offers only information as to possible criminal activity to a foreign government, courts have found no joint venture. United States v. Behety, 32 F.3d 503, 511 (11th Cir. 1994).  In addition, courts have found that an American agent's presence and videotaping of the execution of a search warrant is insufficient to create a joint venture.  Id. (listing cases).  See also

Maturo, 982 F.2d at 61-62 (court found no joint venture where facts established that DEA requested Turkish officials for background information on Turkish phone numbers, but Turkish officials made decision to wiretap such numbers and Turkish officials sought assistance of DEA agents in translations that were intercepted).

Other courts have found that where a foreign government conducts an investigation or search pursuant to an MLAT request, without participation by U.S. agents, there is no joint venture. See United States v. Getto, Crim. No. 09-667, 2010 WL 3467860, at *3 (S.D.N.Y. Aug. 25, 2010) (court found no joint venture where U.S. agents requested Israeli officials, through MLAT, to investigate phone numbers allegedly involved in scam); United States v. Castrillon, Crim. No. 05-156, 2007 WL 2398810, at *4 (S.D.N.Y. Aug. 15, 2007) (court found no joint venture where foreign country responded to MLAT request to conduct search on foreign soil).

Although the Eighth Circuit has not yet addressed this issue, the above cases support a finding that where the facts demonstrate that the United States made a request to a foreign government for information or that the foreign government conduct surveillance of a particular person, that fact alone will not

support a finding of a joint venture.  Instead, there must be facts which show a more substantial involvement by United States officials in the foreign investigation and/or surveillance.  See, e.g., Peterson, 812 F.2d at 490 (facts demonstrated daily involvement by United States officials with foreign officials).

In this case, the evidence presented does not support a finding of joint venture involving the United States and the Netherlands with regard to the wiretap and searches conducted by Dutch law enforcement officials.  The United States requested assistance from the Netherlands through an MLAT request to locate the Defendant and for his provisional arrest.  (Defense Exs. 1-5.)  The government submitted the testimony of a Dutch law enforcement official that responded to this request.  Mr. Fokko Bouwman, a commanding police officer in the Netherlands National Crime Squad testified as to the means and manner of locating and arresting the Defendant and the search of his residence.  (Transcript at 100-120.)  He testified that once the MLAT request was received by the Netherlands, Mr. Bouwman, pursuant to Dutch law, obtained a warrant to tap the Defendant's phone in order to locate him and thereafter obtained an arrest warrant and a search warrant for the Defendant's living quarters.  Mr. Bouwman further testified that the investigation to locate, arrest and search the Defendant

was done with no input from the United States. (Tr. at 139-40.)

The government also presented testimony from Special Agent Kiann Vandenover, the case agent for this case. She testified that U.S. law enforcement did not play a role in setting up a wiretap of the Defendant's phone in the Netherlands, nor were U.S. personnel ever present in the wire room or given daily reports or transcripts from such wiretaps. (Tr. at 149.) She further testified that no U.S. law enforcement personnel were present at the Defendant's arrest or the search of his living quarters following his arrest. (Tr. at 150.)

Apart from the MLAT requests to locate the Defendant, arrest him and to search his residence, the Court finds there is no evidence that demonstrates that the United States had any part in dictating the manner in which the Dutch law enforcement officials would carry out the MLAT requests. In fact, the record clearly demonstrates that the investigation, arrest, search and seizures at issue were conducted solely by Dutch law enforcement officials, pursuant to Dutch law.

The Defendant argues that the government did more than submit an MLAT request - the government also requested transcripts and tapes of electronic surveillance and corresponded with the Netherlands throughout the entire

process. The Defendant further argues that the Netherlands and the United States coordinated the Defendant's arrest to allow the FBI agents to travel to the Netherlands to participate in the interrogations of the Defendant. These joint interrogations took place over three days. Thereafter, the Defendant was interviewed over several days by the FBI and an Assistant U.S. Attorney at the Vught prison.

Despite the fact that the United States requested transcripts of electronic surveillance, as noted above, there is no evidence that any such transcripts were ever forwarded to the United States until months after his arrest in the Netherlands. Furthermore, the fact that the Defendant's arrest was coordinated to allow the FBI to participate in the interrogations of the Defendants does not demonstrate that a joint venture with respect to the investigation and search of the Defendant's residence, as there is no evidence that U.S. agents participated in either. Based on the evidence presented at the hearing, and the applicable law, the Court will not adopt the Magistrate Judge's finding that a joint venture existed between the United States and the Netherlands.

The government also objects to the Magistrate Judge's finding that the Defendant is a "person" entitled to the protections afforded by the Fourth

Amendment based on the fact that the Defendant is a lawful permanent resident.

Those entitled to the protections of the Fourth Amendment are those "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990) (finding that a non-resident alien is not entitled to the Fourth Amendment protections). See also Barona, 56 F.3d at 1094 (noting that the term "people of the United States" includes American citizens at home and abroad and lawful residents within the borders of the United States who are victims of actions taken in the United States, but recognizing the issue of whether a resident alien is entitled to the protections of the Fourth Amendment when traveling outside the borders of the United States). The Eighth Circuit has not yet addressed the issue of whether a lawful permanent resident, subject to a search and seizure on foreign soil, is entitled to the protections of the Fourth Amendment.

The government asserts that although he is a lawful permanent resident of the United States, the Defendant did not maintain "sufficient connection with this country" to be considered a "person" entitled to Fourth Amendment protection. At the time of the surveillance and searches by Dutch officials, the Defendant had

been out of this country for almost one year.  In fact, at the time such surveillance was being conducted, the Defendant was seeking asylum in the Netherlands.  In the first two interviews with Dutch immigration officials, he did not disclose that he had been in the United States and was a lawful permanent resident.  (See Government Exs. 1-4.)  The Defendant only admitted to his status as a lawful permanent resident of the United States after he observed immigration officials had a copy of his green card.  (Government Ex. 5 at 27.)  Based on these facts, the government argues that the Defendant has voluntarily disassociated himself from the United States and ended his membership in this community.

As demonstrated above, the question of whether the Defendant should be considered a "person" entitled to the protections of the Fourth Amendment has not yet been squarely addressed.  The Court need not reach this question, however, based on the above determination that there was no joint venture between the United States and the Netherlands.  See Maturo, 982 F.2d at 60 (Fourth Amendment and exclusionary rule have no application to acts of foreign law enforcement on foreign soil, even if the subject of such search is an American citizen).  Accordingly, the Court will not adopt the Magistrate Judge's determination that as a lawful permanent resident, the Defendant was a "person"

entitled to Fourth Amendment protections.

Finally, the government objects to that portion of the Report and Recommendation to produce confidential informants in its offices 14 days before trial for interview by counsel. The government asserts that it has no confidential witnesses whose identity it seeks to keep hidden through trial. The identity of cooperating witnesses will be disclosed in advance of trial. As these witnesses are represented by counsel, defense counsel is free to contact counsel for the witness to schedule an interview. Based on the government's representation that the identity of cooperating witnesses will be disclosed 14 days in advance of trial, the Court will not adopt that portion of the Report and Recommendation requiring the government to produce such witnesses in their offices.

The Defendant has also filed objections to portions of the Report and Recommendation. The Defendant objects to the Report and Recommendation to the extent it recommends denial of his motions to suppress, his motion to dismiss for multiplicity and his motion for a Bill of Particulars. The Defendant also objects to the recommendation that his motion for disclosure of files and informants and/or confidential human sources be denied, in part.

The Defendant challenges the findings in the Report and Recommendation that the appropriate reasonableness standard is whether electronic surveillance and searches are conducted pursuant to the law where such surveillance and searches took place. Based on this Court's determination that there was no joint venture between the United States and the Netherlands concerning the above electronic surveillance and search and seizure, the Court need not conduct a reasonableness analysis under the Fourth Amendment.

The Defendant also objects to that portion of the Report and Recommendation denying his motion to suppress statements made during interviews at the Vught Prison and statements made during jail calls at the Anoka County jail. With respect to statements made during the Vught Prison interviews, the Defendant asserts that the Magistrate Judge did not give adequate credit to the affidavit of Bart Stapert concerning the harsh conditions at the prison. The Court disagrees.

The Magistrate Judge did credit Mr. Stapert's affidavit concerning the harsh conditions at Vught Prison. Despite these harsh conditions, the Magistrate Judge recognized that the Defendant was represented by counsel when such statements were made, that the statements were made under the terms of a

proffer letter and at the beginning of each interview, the Defendant was read his rights. (Tr. 179-80.) The Magistrate Judge further found no evidence of threats or promises were made to the Defendant, and that he was provided a sufficient numbers of breaks. The Magistrate Judge further found that although defense counsel was present at all such interviews, counsel did not indicate that the Defendant was unable to proceed because of his mental state. Based on these findings, and the evidence submitted, the Court will adopt this portion of the Report and Recommendation.

With respect to the jail calls, the Defendant asserts that the evidence did not support a finding that he was aware of the jail's recording policy. The Defendant argues that no evidence was presented to demonstrate how the Defendant was made aware of the policy. Instead, the government offered the testimony of Lt. Tim Smith, who could only testify as to the jail's policy generally, and that based on such policy, he could only assume that the Defendant was aware of it. The Defendant asserts that there is no evidence which demonstrates that the jail policy, which is provided in English, was translated to the Defendant in his Somali dialect. The Defendant further argues that Government Exhibits 17-19, documents as to the jail's recording policy, were not admitted into evidence at

the hearing. Therefore, although the Magistrate Judge indicated his findings were not based on those exhibits, the Magistrate Judge's reliance on the testimony of Lt. Smith, who testified about what those exhibits say, was not proper.

In testifying about the jail's recording policy, Lt. Smith did not rely solely on Government Exhibits 17-19. Rather, he testified as to his general knowledge of the policy. (Tr. at 217-19.) Lt. Smith also testified that upon booking, inmates are made aware of the jail's recording policy verbally as well as through forms. (Tr. at 217-19.) Lt. Smith further testified that the Defendant, consistent with the jail policy, had attorney phone numbers programmed into the jail system. (Tr. at 228.) Based on this testimony, and that the fact that the Defendant did not present any evidence by which to demonstrate that the Defendant was not made aware of the jail's recording policy, there was a sufficient showing to support the finding that the Defendant was aware of the recording policy at the jail. The Court will thus adopt the Magistrate Judge's findings with respect to the Anoka County jail recording policy.

**IT IS HEREBY ORDERED** that:

1.  Defendant's Motion to Suppress Search and Seizure Evidence (Doc. No. 115) is **DENIED**;

2.  Defendant's Motion to Suppress Wire Interceptions, Electronic Surveillance, and Other Evidence (Doc. No. 116) is **DENIED**;

3.  Defendant's Motion to Suppress Statements (Doc. No. 117) is **DENIED**;

4.  Defendant's Motion to Dismiss Counts for Multiplicity (Doc. No. 120) is **DENIED**;

5.  Defendant's Motion for Bill of Particulars (Doc. No. 121) is **DENIED**; and

6.  Defendant's Motion for Disclosure of Government Files and Other Information Regarding Informants and/or Confidential Human Sources Under Attorney General's Guidelines (Doc. No. 123) is **GRANTED in part**, and **DENIED in part**. The motion is **GRANTED** to the extent it seeks the identities of cooperating witnesses. The government will disclose the identities of cooperating witnesses 14 days in advance of trial. The motion is

>    **DENIED** to the extent it seeks disclosure of evidence regarding whether law enforcement followed the Attorney General's Guidelines Regarding the Use of FBI Confidential Human Sources.

DATED:    June 18, 2012                    s/ Michael J. Davis
                                           CHIEF JUDGE MICHAEL J. DAVIS
                                           United States District Court